Good morning ladies and gentlemen. We are here and with us by video is Judge Rovner. So you will see her on the screen at the podium. And we are ready for our first case, cases I should say, United States v. Haslage and also United States v. Tony. Mr. Pierce. Madam Chief Judge, and may it please the Court, James Pierce for the United States. These Supreme Court's decision in Nichols, venue to prosecute failure to register as a sex offender, is proper in the departure jurisdiction, Wisconsin in this case. Well, the holding of Nichols simply, that once Nichols moved from Kansas, he no longer owed any registration requirement in Kansas, why wouldn't it be the same for interstate travel? What would make it different? The holding in Nichols was indeed, Judge Rovner, that a sex offender does not owe a registration obligation in the jurisdiction which he or she then leads. But that's a different question than the venue question. And the point that we make in our reply brief is that Nichols doesn't address venue precisely because there was no underlying sex offense, excuse me, no underlying section 2250 offense in that case. But the Supreme Court in Nichols, it's true, it didn't say anything about venue. But the holding seems to be just as applicable here. I mean, isn't that how case law, well, isn't that how case law normally works? We take analogous but not identical situations and we extrapolate to the next situation. Certainly that is a way in which the Court interprets cases. However, here, the Supreme Court itself recognized that it was construing section 2250 in a relatively unusual circumstance, that of international travel. And it's also relevant that in the Nichols case, Nichols' obligation to register was based on a federal sex offense conviction. So unlike the two defendants- But why is that, why is that pertinent? I mean, I take it you concede, particularly reading your reply brief, that sex offenders do not violate the law when they leave the jurisdiction for a period of less than seven days, if I recall correctly. So if somebody is a registered sex offender in Wisconsin and they go to Iowa for a wedding for a two-day weekend and they come back, or even a four-day weekend, they have not violated the law. That's correct. So even though they've traveled in interstate commerce. And so I think the argument that is one that one can start with Nichols is that what the Court has told us in Nichols is because there's no obligation to the departure place, there's no violation. It's just a background fact, sort of like being insured by the FDIC is a background fact for bank robberies. And there are all kinds of background facts. You don't have a violation unless there's been movement into the state where you didn't register. But surely it's first Washington, say for the one case, Haslag, and then if she had gone to Washington and then gone on to California and then gone on to Nevada and so on, there would have been a continuing offense once she had committed the offense. But there's no offense until there's a failure to register in the new state. So a couple of responses. It's true that Nichols changes the venue analysis in the sense that now you, oh no, before this Court and others had thought maybe there was a requirement. Right. You haven't done anything wrong in Kansas, for example, in Nichols. Correct. So you couldn't have venue in Kansas since no crime has been committed in Kansas. Correct with this caveat, however. Nichols exposed a loophole in SORNA. Nichols leaves Kansas and then he gets outside of SORNA's jurisdiction. Maybe you are precisely right and you should go to Congress and say, oops, when you forgot to put in anything about departure state, you created a loophole. Well that's exactly what we did and that's exactly what Congress fixed with respect to when you leave the departure jurisdiction and you get outside of SORNA's reach, then you actually have violated SORNA. And so there was a congressional fix, which the Supreme Court in Nichols recognized. Here, however, it's a different analytical question. There's no dispute here that the defendants violated Section 2250. The only argument is, may they be... Well, let's say, I'm not going to quote, I don't know that they've agreed that they violated it. If you had to place venue in the state of Washington or the state of Minnesota, it would be the government's burden to prove, beyond a reasonable doubt, that they had committed this violation. And perhaps they would say, I tried to register but it was the wrong place or, you know... And that's an affirmative defense. Exactly. But in other words, it's not a conceded violation. You would be entitled, in the jurisdiction where the facts are going to be most readily available, to try to prove that they violated. That's certainly a fair point. I want to get back, however, to the thrust of your earlier comment about analogizing this to sort of an FDIC where that's just simply a jurisdictional predicate. The Supreme Court in Carr has made quite clear, and this Court has also recognized, travel is different with respect to a Section 2250 offense. It's certainly jurisdictional, but it's more than that. And it's the conduct at which Congress took aim. And at least one court, the Eleventh Circuit in Copp, has held that precisely the fact that you are traveling from one state to another is what creates the venue or permits venue in the departure jurisdiction. But your problem is that it's not all travel. Judge Rovner? How is it that Hasledge and Toney came to be detained in Wisconsin and not in Washington or Minnesota, respectively? Judge Rovner, the record doesn't speak to that. I believe the answer, and perhaps my colleague on the other side can answer it more precisely, is that both violated Wisconsin law. I believe Wisconsin does require some sort of notification before leaving, and therefore were detained under State law. Now, we're not making the argument that the fact that they violated State law is what creates venue as a matter of Federal law. Was there a detainer? I do not believe so. Unlike the Arrona-Ibarra case where you have that issue, that's not why they were brought back into the State. But again, we're You know, if we thought that interstate travel triggers the offense, the interstate travel didn't begin until the defendant set foot outside of the Wisconsin State line. And by then, by definition, no crime has occurred in Wisconsin, right? Not yet. We agree criminal liability doesn't attach until later. But again, in Carr, this Supreme Court talked about a sequential reading where you've got already the obligation to register, then the travel, then the ultimate failure to register. But Judge Rovner's point is that if they're just going from Milwaukee to Eau Claire, they're in Wisconsin. Even if somewhere in the back of their mind, they're thinking, maybe I'll go from Eau Claire to St. Paul. But there's no interstate travel until they cross the boundary of Wisconsin, and they're not in Wisconsin anymore. That's true, but their fact of traveling out of State is precisely then what creates Federal jurisdiction. But the Federal jurisdiction, yeah. Suppose Tony had left Wisconsin intending to move to Minnesota. The day she arrives, she says, you know, this is too cold for me. And she turns around, she comes back. Was SORNA violated? Can we say that the offense was triggered? If she returns within three business days, then, and she, it doesn't appear then that she would actually have violated Section 2250. But certainly that's not the issue here. Even though she had the intent when she left to abandon Wisconsin. She closed all her bank accounts. She found a new, ended her lease, whatever. If she then returns to the residence that she left, she hasn't in fact changed her residence at that point. And so, yes, I think there would be no SORNA violation. But these questions go to a different, there will be thorny questions about when SORNA is violated that are distinct from if SORNA is violated, where they may be prosecuted. Given that there may be affirmative defenses in this case, here the core question is, may it be prosecuted in Wisconsin? And not only because it's an element of the offense, it's also something that continues to affect Wisconsin. SORNA's registration procedures require Minnesota and Washington to then inform Wisconsin about the move that Haslidge and Tony have made by not registering in the arrival jurisdictions. That is also not triggered. And so you have the effects, the Wisconsin registry affected as well as a matter of the continuing offense. If you want to save just a minute for rebuff. I was hoping to do that unless Judge Roedner had a question. I can always give you an extra minute. He's down to his last minute. Oh, I'm just wondering why you didn't seek indictments in Minnesota and Washington. It's possible in this case there may be instances where statute of limitations problems exist. There are also resources. One state to the other? I'm sorry? I think she meant originally. No, no, my point is if in a particular case you had indicted in the departure jurisdiction and then the statute of limitations runs. So it's true in this case it would have been possible. You could imagine cases where it would not. Well, it sounds like Wisconsin is holding these defendants anyway. So as a matter of practicality, the cooperation between the jurisdictions within the same state makes more sense if venue is appropriate rather than sending them back to the states to which they traveled. Certainly, and that also speaks to the underlying policy concerns that venue, which we argue and defendants, I think, agree are not an issue in this case. I'm out of time. Hopefully I can still come back in the summer. Thank you. Mr. Stiller. Good morning and may it please the Court. I guess I'll start by addressing sort of the outside the record concerns that Judge Roedner asked about. My understanding is that Ms. Tony were brought back to Wisconsin based on violations of their preexisting state supervision. In other words, they not only, quote unquote, absconded from sex offender registry, they absconded from state supervision. That brings us a little bit back to a question that Judge Wood, you were asking about. Nichols may have preyed upon a loophole whereby at the time SORNA didn't require a person departing the country to register. And the Department of Justice went to Congress and that's now been fixed. Here we've kind of got a different kind of loophole. If the government wishes to have at least two options for venue in any given SORNA case, they can lobby Congress to amend the federal statute to require that a sex offender departing a state notice the state from which they're departing. Why does it require an amendment of the substantive offense? The venue statute clearly covers this because it provides that if the offense is begun, continued, or completed in any jurisdiction, venue is appropriate. And why isn't this just a straightforward set of cases about where the offense was begun? It's clear that both absconded from Wisconsin. I agree, Your Honor. And in my brief, I framed the ultimate question in this case as does the offense of violating SORNA commence in Wisconsin when it doesn't occur only after Wisconsin? It's not completed until later if there's a failure to register in the new jurisdiction of residence. That doesn't mean the offense doesn't begin in the state from which the defendants absconded. I believe the answer is yes, this crime does not commence until you've changed your residence and allowed more than three business days to lapse. So that's a conflation of the offense beginning and the offense being completed. It must mean two different things in the context of an interstate travel violation or an offense that involves interstate travel. The offense can't begin and be completed in the same place when that's a key element of the offense. Correct. So your argument just fails on its face. I disagree. As this court acknowledged in U.S. v. Sanders, the travel element of a 2250A prosecution is the means by which defendants like Hasledge and Toney, who were convicted of state sex offenses, become subject to federal regulation. With federal regulation now hanging over their heads as they traveled west, it sort of monitored their activity. They had a grace period in the jurisdictions to which they arrived, and a crime occurred. It began... In Wisconsin. Not in Minnesota and Washington. That's just metaphysically and physically impossible. Your Honor, obviously if the court concludes that the offense commenced with getting in the car or boarding a train in Wisconsin, venues proper in Wisconsin... It must. There's no other way to look at it. Are you conceding that all crimes begin and end in different jurisdictions? I don't know why you couldn't have many crimes that both begin, take place, and end all in the same state. A bank robbery begins with somebody planning, and they go over to the bank, and then they rob it, and it takes place, and it ends all in the same state. So I'm confused that you're conceding, or maybe I misheard you, that begin, carry out, and end are all different places necessarily. I find myself a bit in the position of arguing against myself, but bank robbery is not a continuing crime. It's an event. What about a continuing crime, such as being a felon in possession of a firearm? You're that continues to be a crime as long as you have the firearm. As long as you have the firearm, correct. So is there a different state element to that? No. No. I mean it can start... The different state elements, the manufacturer of the gun. It depends on the facts of the case and how you understand the crime, whether begin, carry out, and end are all in the same place, or whether they're in different places. I think what you need to explain is why your theory that this is all in the state where the registration doesn't happen, that's to say the destination state, isn't undermined by the Supreme Court's decision in Carr, where the court says this isn't just a jurisdictional hook, it's an  incident. Your Honor, I think Carr said too much. Ultimately it's holding... We have to follow Carr, of course, obviously. Certainly the holding of Carr, but not necessarily the commentary of Carr. The holding of Carr is that because the travel occurred before Sorna's enactment, at the time of travel, the defendants in Carr were not subject to... They weren't sex offenders required to register. So sequence was out of order, because travel happened, then Sorna created, which required the registration requirement, and then a lack of registration. Carr then went on to speak to its perspective on what Sorna is intended to target, and it did say that travel's at the heart of Sorna, but we know from the examples that your Honor has already asked of the government that sex offenders can travel rather freely. It's only up to the point they establish a residence do they then have the three-day window. The government's theory of sort of retroactive commencement of the offense, they've not offered any other federal offense that has a retroactive commencement, and whereas your Honor mentioned 922G, I find 924C to be perhaps the best analogy. That's possession of a firearm in furtherance of crime or violence. Possessing a firearm is a continuing course of conduct. So you can imagine a scenario where the defendant acquires a gun in East St. Louis, and possesses it for some period of time, and then crosses into Missouri to commit a crime of violence. No one would say that the crime of violence commenced for 924C purposes with the acquisition of the gun in some other state, even though that is an element of the 924C offense. I believe I'm out of time? No, you're not. Not until the red light turns on. Oh, thank you. About a minute and a half. Interstate travel is not an element of that offense. Correct. So it's just the analogy is not appropriate here. But this is a different... This is an interstate travel offense. That's an essential element of the offense. We know that based on Carr and based on what the statute itself says. So the offense necessarily commences in one place. There's a crossing of state lines with the requisite intent, and then the failure to register in the new jurisdiction if the registration duty kicks in after three days. This is a different form of travel than we encounter under other statutes. So for instance, the Mann Act, travel in furtherance of prostitution. The prostitution is an ongoing thing at the time. Here, the way this statute operates, the travel is a precondition to the actual criminal conduct, which is the failure to register. That's right. So the offense begins in one state and is completed in another when there is a failure to register. And perhaps there we fall back on the question... So you're distinguishing between a precondition and an element? What's the difference that you see? In the Mann Act scenario, the travel is part of criminality. In the 2250 context, the travel is just travel unless and until some other things happen in the receiving jurisdiction. So is that because a great deal of travel is legal, whereas none of prostitution is? Yes, and under SORNA you've got the ability to change your mind. A variety of things can happen in the receiving jurisdiction such that no crime has ever occurred. And I think that is what makes SORNA travel different than travel under other statutes. And with that, unless the court has further questions, I'll end there by asking that the judgments of the decisions of the district court be affirmed. All right, and I will in fact give you another minute, Mr. Pierce, since you were interrupted by questions. Let me speak directly to Carr and the fact that travel was central to the holding. If it wasn't central, and as Carr itself explains, an offense is like 922G where it is just a jurisdictional predicate. It wouldn't matter when those actually happened. Here, the travel is an element that must be proved up and that in cases like this where it's a state-based sex offender has to start somewhere. And it started, as Judge Sykes pointed out, in Wisconsin. And not only because it's an element, but also because of 3237, both its first and second sentences that allow for prosecutions where something begins, and also defines in the second sentence that a continuing offense is an offense that involves transportation and interstate commerce. And here, we have to accept, or the court has to accept the facts as alleged, that the indictment alleged travel from Wisconsin to these other states. So it's different than a 922G offense and other offenses where really we're talking about a jurisdictional predicate as opposed to something, as Carr made clear, not only in its holding, but in its rationale that travel is central. Thank you. All right, thanks to both counsel. We will take the cases under advisement.